**STARR, Appellee,**

**v.**

**STARR, Appellee; Cuyahoga County Support Enforcement Agency, Appellant.**

[Cite as *Starr v. Starr* (1996), 109 Ohio App.3d 116.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69255.

Decided Feb. 1, 1996.

*Hyatt Legal Services* and *Blaine L. Gottehrer*, for appellee.

*Jeffrey Hastings*, for appellant.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Arline M. Zehe*, Assistant County Prosecuting Attorney, for intervenor-appellant, Cuyahoga County Support Enforcement Agency.

*Per Curiam.*

Appellees Michael Starr and Susan Starr were divorced in January 1992. They had three minor children. Prior to the divorce, the parties agreed that the husband would pay $102 per month in temporary support through a wage order. On March 3, 1992, the parties signed a separation agreement, which the court incorporated into the divorce decree. The agreement provided that the father would pay mortgage, taxes, insurance, utilities, and other payments directly to vendors in the amount of $581 per month (the amount mandated by the current support guidelines). The parties recognized that the husband had made similar in-kind payments in lieu of child support in the past and wished to continue this arrangement. At the time of the divorce, the mother collected $708 per month in Aid to Dependent Children ("ADC") payments and food stamps.

The Cuyahoga Child Support Enforcement Agency ("CSEA") subsequently sought to intervene as a party and vacate the child support provisions of the divorce decree. CSEA argued that its standing to intervene as a party arose

under R.C. 5107.07, since the wife had been receiving ADC. CSEA maintained that the parties could not voluntarily deviate from the child support statute and agree to an arrangement that did not require support payments to be made through the agency. Additionally, CSEA argued that the parties agreed to deviate from the support guidelines and impose a lesser obligation on the father.

The domestic relations court granted CSEA's motion to intervene, but denied the motion to vacate the divorce decree. In its first assignment of error, CSEA argues that the domestic relations court order incorporating the parties' separation agreement on child support is void *ab initio* because CSEA had not been named a party at the time the action had been filed, nor had the parties taken any steps to notify CSEA of the proceedings. CSEA maintains that it had the right to intervene and be heard on child support issues at the time of the divorce action since the mother's receipt of ADC payments and food stamps constituted an assignment of rights to CSEA. CSEA claims that it could protect its rights only by appearing in the action. Since it had no opportunity to do so, it maintains that the support order should be vacated.

 In this case, CSEA proceeded as if a default judgment of divorce had been granted against it because it failed to receive notice sufficient to allow it to intervene. This position necessarily assumes that CSEA is a proper party to the divorce action. As an agency of the Department of Human Services, CSEA can collect from an obligor spouse state funds paid for a child's welfare. See R.C. 5107.04; *In re Harris* (May 12, 1994), Cuyahoga App. No. 65913, unreported, 1994 WL 189143. Pursuant to R.C. 5107.07(A)(2), the mother's acceptance of ADC would constitute an assignment of her rights to CSEA and CSEA would be a proper party to any child support action. *Cramer v. Petrie* (1994), 70 Ohio St.3d 131, 637 N.E.2d 882; *Cuyahoga Cty. Support Enforcement Agency v. Lozada* (1995), 102 Ohio App.3d 442, 657 N.E.2d 372.

Although the mother's assignment of rights would make CSEA a proper party to a support action, it does not make CSEA a proper party to a divorce action. CSEA cites Civ.R. 75(B) as authority for the proposition that it be joined as a party to the divorce proceedings. However, Civ.R. 75 states that ordinary rules relating to permissive and mandatory joinder of parties do not apply in divorce actions. Existing exceptions relate to a person or corporation claiming an interest in property out of which an award of spousal or other support might be made. See Civ.R. 75(B)(1).

 CSEA makes no claim to an interest in "property" out of which an award of support might be made in a sense contemplated by the rule. Civ.R. 75(B)(1) properly applies to pecuniary or equitable interests in a debtor/creditor situation.

CSEA does not claim such an interest. It does claim an interest in enforcing payment of all support obligations, but that interest does not arise out of any claim to obligor spouse's wages.

Nor for that matter is CSEA a real party in interest to the divorce action. A "real party in interest" is "one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, *i.e.*, one who is *directly* benefitted or injured by the outcome of the case." (Emphasis sic.) *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 24, 20 OBR 210, 211, 485 N.E.2d 701, 702. CSEA makes no claim that it had a substantive right to relief in the divorce action or that it was entitled to damages. *Young v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1993), 88 Ohio App.3d 12, 623 N.E.2d 94. While the state "has a direct financial interest in the enforcement of child support orders," *Cramer v. Petrie, supra,* 70 Ohio St.3d at 134, 637 N.E.2d at 885, it has no right to participate in the creation of such orders. We are aware of no authority that would permit CSEA to be a party to the divorce decree, cf. *DeLong v. Stark Cty. Dept. of Human Serv.* (1986), 36 Ohio App.3d 103, 521 N.E.2d 463; consequently, the divorce decree in this case itself is not void and cannot be vacated on those grounds.

It is unfortunate that the law does not conform to the realities of this case. In the absence of a support order payable through CSEA, parties to a divorce action can deliberately tailor their support obligations in such a way that the obligee spouse can still collect public assistance. Regardless of the parties' intent at the time of the separation agreement, the agreement was structured in such a way that it permitted the wife to receive financial support from both her husband and the state in excess of that allowable under the statutory guidelines. Absent notice or a meaningful opportunity to intervene, CSEA will be unable to enforce the obligor spouse's support obligations. While parties to such a plan may not succeed indefinitely, the costs to the state in seeking postdecree modification and enforcement are significant, and, considering the lapse of time, those efforts may well be futile.

CSEA operates in a vacuum insofar as it knows when any particular divorce action may require it to intervene on behalf of the state. No doubt a domestic relations court rule requiring CSEA's joinder in actions where a recipient spouse is a party in a divorce action would go far toward solving problems in this area. This is an issue best solved by the General Assembly, not the courts. The first assignment of error is overruled.

The second assignment of error complains that the domestic relations court erred by issuing a child support order that failed to comply with statutory requirements that support be paid through CSEA. It argues that the father's in-

kind payments are actually child support which should have been ordered payable through CSEA pursuant to R.C. 2301.36(A).

The domestic relations court order relating to the in-kind payments is equivocal. It states:

"[P]laintiff shall, in lieu of periodic payment of child support, pay the mortgage on the marital residence, the taxes, insurance, electric, gas, water and sewer bills for the marital residence and such other payments to vendors directly in sum equal to Five Hundred Eighty-one Dollars ($581.00) per month, which sum equals plaintiff's obligation pursuant to the child support guidelines. Attached hereto as Exhibit B is the worksheet used in computing the child support under O.R.C. 3113.215. All payments which are not made as outlined above shall not be considered as payment of support."

The order begins by stating that the in-kind payments will be made "in lieu of periodic payment of child support," but goes on to state that all payments which are not made as outlined in the order "shall not be considered as payment of support." We assume that the final phrase in the paragraph is meant to indicate that any payments not falling within the court order will be presumed gifts in excess of the support requirement. See R.C. 2301.36(A); *Mihna v. Mihna* (1989), 48 Ohio App.3d 303, 549 N.E.2d 558. That phrase would have no meaning unless the domestic relations court understood that the in-kind payments were child support.

Since the in-kind payments are child support, CSEA has standing to enforce the payment of support under its assignment of rights. We find that the domestic relations court erred by not requiring those payments to be made through the bureau of support. R.C. 2301.36(A), in force at the time of the decree, stated, "upon issuing or modifying any order described in division (D) of section 3113.21 of the Revised Code, the court shall require that support payments be made to the child support enforcement agency of the county * * *." The domestic relations court had no authority to approve in-kind payments as child support, but freeze CSEA out of its enforcement capacity. Accordingly, we sustain the second assignment of error and remand with instructions to enter a proper wage order through CSEA.

The judgment is reversed, and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

PATTON, C.J., NAHRA and KARPINSKI, JJ., concur.