[Cite as *Lepore v. Breidenbach*, 2015-Ohio-2929.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SUZANNE V. LEPORE, | : | APPEAL NO. C-140310 |
| | | TRIAL NO. DR-1102278 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| CHARLES A. BREIDENBACH, | : | |
| | | |
| Defendant-Appellee. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relation Division

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: July 22, 2015

*Statman, Harris & Eyrich, LLC, Alan J. Statman* and *Thomas S. Sapinsley*, for Plaintiff-Appellant,

*Phillips Law Firm, Inc.*, and *Alfred Wm. Schneble*, for Defendant-Appellee.

Please note: this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   Plaintiff-appellant Suzanne V. Lepore appeals the trial court's decision denying in part her motion to find defendant-appellee Charles A. Breidenbach in contempt for failing to pay child support as provided for in a decree for legal separation and a decree for shared parenting. We find merit in her arguments, and we reverse the trial court's judgment.

### I.   Facts and Procedure

{¶2}   The record shows that the parties were married in 2000 and that they had four children. They entered into a separation agreement and an agreement for shared parenting in October 2011, after Breidenbach had moved out of the marital home. The parties' agreements were incorporated into a decree of legal separation and a final decree of shared parenting, which the court journalized in January 2012. During those proceedings, Lepore was represented by counsel. Breidenbach was not represented, although he acknowledged to the court that he had voluntarily signed the agreements.

{¶3}   The agreements incorporated into the decrees created a two-tiered child-support obligation. The first tier, which was calculated with a child-support worksheet using Breidenbach's base pay, was to be paid through the Child Support Enforcement Agency ("CSEA"). The second tier involved child support based on the bonuses and commissions Breidenbach received as part of his compensation.

{¶4}   The relevant provisions of the decree of legal separation stated:

[I]n accordance with the child support worksheet attached hereto, Defendant shall pay child support in the amount of $428.86 per month per child plus a 2% processing charge, through The Office

2

of Child Support of The Department of Jobs [sic] and Family Services for the parties' minor child. This order is effective on the 1st day of September 2011 and is payable monthly in the total amount of $1,749.74, including the processing charge.

The parties acknowledge that, due to the number of children and their ages, it is not feasible or appropriate for Plaintiff to work outside of the home except for the time she spends running SVL, Inc. The parties acknowledge that Defendant just started a job that pays a base salary of $52,988.00 plus commissions and that the child support has been calculated solely upon his base salary. The parties agree that, effective immediately, Defendant shall pay 100% of any commissions and bonuses he receives [to] Plaintiff within 7 days of his receipt thereof as additional child support. These amounts shall be paid directly to Plaintiff by check, money order or some other means that can be used to verify the payment.

The parties understand and acknowledge that these support obligations are more than the guideline support reflected in the child support worksheet attached hereto. However, the parties agree that the guideline support is not sufficient to provide for the needs of the children and is unjust and inappropriate. Therefore, the parties agree that a deviation from guideline child support is in the best interest of the children.

Defendant is under a continuing obligation to advise Plaintiff of changes to his base salary. Defendant shall also provide to Plaintiff a copy of his biweekly pay stubs and any other check he receives from

his employer. Defendant shall provide the information to Plaintiff within 3 days of the date on which he is paid.

{¶5} After the decrees were entered, the parties attempted to reconcile. Breidenbach moved back into the marital home in August 2012. While they resided together, the parties comingled their income and expenses. Their attempts at reconciliation were unsuccessful, and Breidenbach moved out again in June 2013.

{¶6} On August 7, 2013, Lepore filed a motion for contempt. She asked the trial court to find Breidenbach in contempt for failing to pay 100 percent of his bonuses and commissions directly to her and for failing to provide his biweekly pay stubs and any other checks he had received from his employer, as required by the separation agreement incorporated into the decree.

{¶7} Subsequently, Breidenbach filed a Civ.R. 60(B) motion for relief from judgment. He argued that (1) the actions taken by the parties to reconcile voided the terms of the previous decrees, (2) Lepore had engaged in fraud and overreaching to get him to sign the agreements, and (3) the decrees themselves were inherently inequitable. The trial court overruled his motion.

{¶8} Lepore's motion for contempt was heard by a magistrate. The magistrate found that Breidenbach was in contempt for failing to provide to Lepore pay stubs and copies of any other check he had received from his employer. The magistrate also found that he was in contempt for failing to pay her his net bonus and commission income that he had earned from February 1, 2012, to "mid-August 2012," and from June 1, 2013, to August 9, 2013.

{¶9} The magistrate recommended that Breidenbach be sentenced to 30 days' incarceration, but ordered that sentence stayed. The magistrate stated that to purge himself of contempt, Breidenbach had to pay Lepore $14,171.75, which was the

total amount of commission and bonus income he had received minus a set-off for funds Lepore owed to him, and to provide her with certain data. The magistrate also ordered Breidenbach to provide Lepore with copies of his pay stubs and any other checks he receives from his employer within three days of receiving them. Finally, the court awarded Lepore attorney fees and costs associated with the motion for contempt.

{¶10} Both parties objected to the magistrate's decision. Breidenbach's objections included his contention that the magistrate's decision "ignored the mandates as required in the Ohio Revised Code for the calculation of child support, and thus finding [him] in contempt for not paying said support is against the law and public policy."

{¶11} In its entry ruling on the objections, the trial court listed the parties' objections. But it stated that "[i]n considering these matters, the Court has determined that a more fundamental issue guides the consideration of the decision of the magistrate[.]" It found that the order in the decree requiring Breidenbach to pay child support directly to Lepore was not valid, because it did not comport with the requirement of R.C. 3121.44 that the court must require any child-support payment to be paid to "the office of support in the department of job and family services." The court then cited case law for the proposition that a party cannot be found in contempt for violating an invalid order. It concluded that "[g]iven the Court's determination that it was without authority to order Husband to pay child support to Wife directly, the Court vacates the magistrate's finding of contempt on that basis."

{¶12} The trial court found the magistrate was correct in finding that Breidenbach was in contempt for failing to provide Lepore with copies of his pay

stubs and other checks from his employer. It found him in contempt, and sentenced him to serve ten days incarceration, but stated he could purge himself of contempt by providing those documents to Lepore as ordered in the decrees. This appeal followed.

## II. A Voidable Order

{¶13} In her first assignment of error, Lepore contends that the trial court erred in finding that the child-support orders were invalid, because the decrees did not require them to be paid through CSEA. She argues that a child-support order requiring a direct payment of child support that is issued by a court that has both personal and subject-matter jurisdiction is a valid order. This assignment of error is well taken.

{¶14} R.C. 3121.44 and 3121.45 set forth clear and mandatory language requiring the payment of child support to CSEA and obligating the court to consider any direct payment as a gift. *In re Barone*, 11th Dist. Geauga No. 2004-G-2575, 2005-Ohio-4479, ¶ 21-22. Some courts have stated that the trial court has no authority to approve payments that are not paid to CSEA. *See Bowley v. Bowley*, 12th Dist. Warren No. CA97-12-126, 1998 Ohio App. LEXIS 2280, *3-4 (May 26, 1998); *Starr v. Starr*, 109 Ohio App.3d 116, 121, 671 N.E.2d 1097 (8th Dist.1996).

{¶15} There is no question that the trial court's order in the decree of legal separation and the decree of shared parenting, allowing the payment of child support directly to Lepore rather than to CSEA, was error. But no direct appeal was filed from those decrees. Further, the trial court overruled Breidenbach's Civ.R. 60(B) motion for relief from those judgments, and Breidenbach did not appeal that decision.

6

{¶16} The question becomes whether the error rendered those portions of the decrees void or voidable. A judgment is generally void only when the court rendering the judgment lacks subject-matter jurisdiction or jurisdiction over the parties. *Miller v. Nelson-Miller*, 132 Ohio St.3d 381, 2012-Ohio-2845, 972 N.E.2d 568, ¶ 12. A void judgment is a nullity that may be collaterally attacked at any time. *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶ 46; *Boehm, Kurtz & Lowry v. Evans Landscaping, Inc.*, 1st Dist. Hamilton No. C-140597, 2015-Ohio-2692, ¶ 9.

{¶17} A voidable judgment, on the other hand, is rendered by a court that has both jurisdiction and authority to act, but the court's judgment is invalid irregular, or erroneous. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 6; *Miller* at ¶ 12. A voidable judgment may be attacked on direct appeal or in a timely motion for relief from judgment under Civ.R. 60(B). Until a court declares a voidable judgment invalid, it has all the ordinary consequences of any other judgment. *Tari v. State*, 117 Ohio St. 481, 493-494, 159 N.E. 594 (1927); *Leman v. Fryman*, 1st Dist. Hamilton No. C-010056, 2002-Ohio-191, ¶ 12.

{¶18} The jurisdiction of the domestic relations court is statutory. *Davis v. Cincinnati Enquirer*, 164 Ohio App.3d 36, 2005-Ohio-5719, 840 N.E.2d 1150, ¶ 11 (1st Dist.). R.C. 3105.011 states that "[t]he court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." Thus, the trial court in this case had jurisdiction to issue the decree of legal separation and the decree of shared parenting. Additionally, the parties do not dispute that the trial court had personal jurisdiction over them. *See* R.C. 3105.03; *Rijo v. Rijo*, 1st Dist. Hamilton No. C-930704, 1995 Ohio App. LEXIS 299, *14-18 (Jan. 31, 1995). Because the court had

7

both subject-matter jurisdiction to issue the decrees and personal jurisdiction over the parties, the court's failure to order the child support to be paid to CSEA does not render the judgments void.

{¶19}   Because the judgments were voidable, they could be attacked only on direct appeal.  Both the decree of legal separation and the decree of shared parenting were final, appealable orders.  *See* R.C. 2505.02(B); Civ.R. 75(F); *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 15.  Consequently, the error should have been raised on direct appeal.  Though Breidenbach did file a Civ.R. 60(B) motion for relief from judgment, he did not raise the issue of the court's failure to order the child support to be paid through CSEA, and he did not appeal the court's denial of the motion.  Consequently, the validity of the child-support orders could not be collaterally attacked in a contempt proceeding.  *See Ahmed v. Shafik Ahmad*, 2d Dist. Montgomery No. 23740, 2010-Ohio-5635, ¶ 23.

{¶20}   While the domestic relations court could exercise its continuing jurisdiction to order that future child-support payments be made through CSEA, it could not rescind the order as to the child-support arrearages already due.  *See Broadnax v. Bowling*, 1st Dist. Hamilton No. C-030502, 2004-Ohio-1114, ¶ 14.  Consequently, we sustain Lepore's first assignment of error.

### III.   Order is Enforceable by Contempt

{¶21}   In her third assignment of error, Lepore contends that the trial court erred in finding that the child-support orders were unenforceable in contempt.  She argues that because the child-support orders were not void, but merely voidable, they could be enforced in contempt.  This assignment of error is well taken.

{¶22}   This court has said that a party may not be found in contempt of an invalid order.  *See Cincinnati Met. Hous. Auth. v. Cincinnati Dist. Council,* 22 Ohio

App.2d 39, 44, 257 N.E.2d 410 (1st Dist.1969). *Accord Jurek v. Jurek,* 8th Dist. Cuyahoga No. 52846, 1987 Ohio App. LEXIS 7809, *3-4 (July 9, 1987); *Paszczykowski v. Paszczykowski*, 6th Dist. Lucas No. L-80-301, 1981 Ohio App. LEXIS 10359, *3-4 (May 29, 1981). But this rule is inapplicable to the present case because the orders sought to be enforced were still valid. The error rendered them voidable, but they were never reversed, vacated, or set aside.

{¶23} Obedience to judicial orders is an important public policy. Parties must obey an order issued by a court of competent jurisdiction until it is vacated or reversed through proper procedure. *Walker v. Birmingham*, 388 U.S. 307, 313-314, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. United Mine Workers*, 330 U.S. 258, 293-294, 67 S.Ct. 677, 91 L.Ed.2d 884 (1947); *Westlake v. Patrick*, 8th Dist. Cuyahoga No. 88198, 2007-Ohio-1307, ¶ 6. "If a party can make himself a judge of the validity of orders which have been issued, and by his own disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *United Mine Workers* at 290, quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

{¶24} Consequently, a violation of a court order is punishable by contempt even if a court later determines that the order is invalid. *Walker* at 314; *United Mine Workers* at 294; *Westlake* at ¶ 7. Parties faced with an invalid order must have it modified or vacated. They cannot simply ignore it. *Natl. Equity Title Agency v. Rivera*, 147 Ohio App.3d 246, 2001-Ohio-7095, 770 N.E.2d 76, ¶ 2.

{¶25} In this case, the child-support order allowing for payment directly to Lepore was not declared invalid until the trial court's May 5, 2014 order. Before that date, Breidenbach was required to pay his bonuses and commissions as required by

9

the separation agreement incorporated into the decrees, and could be found in contempt for failing to do so. Consequently, we hold that the trial court erred in holding that he could not be found in contempt for violating the child-support order. We sustain Lepore's third assignment of error.

### IV. Res Judicata

{¶26} In her second assignment of error, Lepore contends that the trial court erred in addressing the issue of whether the child-support orders were invalid. She contends that the question of the validity of the orders is res judicata because Breidenbach did not appeal the decree of legal separation or the trial court's order overruling his Civ.R. 60(B) motion.

{¶27} As a general rule, motions regarding child support invoke the court's continuing jurisdiction and are not barred by res judicata. *Flege v. Flege*, 12th Dist. Butler No. CA2003-05-111, 2004-Ohio-1929, ¶ 32; *In re Kelley*, 2d Dist. Champaign No. 2000-CA-14, 2000 Ohio App. LEXIS 5833 *8-9 (Dec. 15, 2000). But, to the extent that a party seeks to revisit an issue regarding a support arrearage that was previously considered and decided by the court, the doctrine may be applied. *Klein v. Botelho*, 2d Dist. Montgomery No. 24393, 2011-Ohio-4165, ¶ 86; *Kelley* at *8-9.

{¶28} Consequently, issues regarding the validity of the child-support orders in the decrees were res judicata and cannot be collaterally attacked. The failure to pay past child support can be enforced by contempt. But due to the continuing jurisdiction of the domestic relations court over child support, Breidenbach can still seek to have the amount of future child support modified. With that caveat, we sustain Lepore's second assignment of error.

{¶29} Finally, in her fourth assignment of error, Lepore contends that the trial court erred in finding that it was without authority to adopt the parties'

10

agreement concerning the payment of child support. We agree. The decree of legal separation and the shared-parenting decree were both final, appealable orders. Any alleged errors contained in those decrees should have been raised in a direct appeal from the decrees themselves. They cannot be raised now in an appeal from the court's ruling on Lepore's motion for contempt. *See Marshall v. Marshall*, 4th Dist. Lawrence No. 06CA9, 2007-Ohio-3041, ¶ 20-25. Consequently, we sustain Lepore's fourth assignment of error.

### V. Summary

{¶30} In sum, we reverse that part of the trial court's decision vacating the magistrate's finding of contempt on the basis that the court was without authority to order Breidenbach to pay support to Lepore directly and not through CSEA. Because the court determined that the order was invalid, it found all of the other objections to the magistrate's report to be moot. Consequently, we remand the cause to the trial court to determine the validity of those objections and to determine whether to adopt, reject, or modify the magistrate's decision on that basis. *See* Civ.R. 53(D)(3) and (4); *Chan v. Tasr*, 1st Dist. Hamilton No. C-070275, 2008-Ohio-1439, ¶ 6-11. We affirm that part of the trial court's decision finding Breidenbach in contempt for failing to provide his pay stubs and copies of any other checks as provided for in the decrees.

Judgment affirmed in part, reversed in part, and cause remanded.

**HENDON, P.J.,** and **DEWINE, J.,** concur.

Please note:
    The court has recorded its own entry this date.

11